# United States District Court
## Western District of Virginia
## Harrisonburg Division

_____  )
                                     )
                                     )
**DAVID W. THOMPSON**,               )    Civil No.: 5:11cv00060
                                     )
    *Plaintiff*,              )
v.                                   )    **REPORT AND**
                                     )    **RECOMENDATION**
**MICHAEL ASTRUE**,                  )
Commissioner of Social Security,     )
                                     )    By:  Hon. James G. Welsh
    *Defendant*               )    U. S. Magistrate Judge
_____  )

    David W. Thompson brings this civil action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying his applications for a period of disability and disability insurance benefits ("DIB") [1] under Title II and for Supplemental Security Income ("SSI") [2] under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively.  Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

    The record shows that the plaintiff originally filed his claims for DIB and SSI on September 16, 2003.  (R.37,130-132,371-374,383).  Therein, he alleged that he became disabled

---

[1]  The plaintiff's insured status for DIB expired December 31, 2005.  (R.22,135,146).

[2]  The plaintiff's period of eligibility for SSI extends through the date of the ALJ's May 17, 2007 decision.

1

on September 9, 2000 [3] due to the near total amputation of his right foot in a work-related lawn mower accident. [4] (R.37,135,141,158,170). Both claims were denied initially, on reconsideration, and for a third time following an administrative hearing (R.418-451) by written decision dated June 2, 2005. (R.30-31,51,56-60,61,383-390). During the pendency of the plaintiff's request of Appeals Council review, he filed a second set of applications on March 15, 2006; these were similarly denied initially and on reconsideration. (R.32-33,84-86, 91-93,395-401,415). They effectively became duplicate claims, however, when the Appeals Council on January 25, 2007 vacated the original hearing decision and remanded the case to the ALJ with instructions to give further consideration to the plaintiff's residual functional capacity and to obtain supplemental vocational testimony. (R.51-52).

Following Appeals Council remand, a second administrative hearing was held on April 17, 2007 (R.453-490), and a new ALJ decision was issued on May 17, 2007 (R.19-28). Concluding that the plaintiff functional limitations and restrictions due to pain and other symptoms did not preclude the performance of a limited range of sedentary work, the ALJ again denied the plaintiff's claims. (R.22-28). After unsuccessfully seeking Appeals Council review

---

[3] The alleged onset date was later amended to October 2, 2001. (R.37,82,383).

[4] Although the plaintiff also alleged "back problems" as a reason for his disability, he was seen only twice at Emergicare of Waynesboro for "strained muscles in [his] lower back," once in January and once in February 2000. (R.351-352). Consistent with this limited treatment history, the plaintiff reported to Dr. James Long in July 2006 that his back discomfort was no longer much of an issue and required only occasional use of an over-the-counter analgesic. (R.353). The absence of any decisionally significant low back disorder is also demonstrated by lumbar X-rays taken in April 2004 and in July 2006. (R.338,339).

(R.9-15), the unfavorable ALJ decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer to the plaintiff's Complaint, the Commissioner has filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By standing order this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment, and each has filed a supporting memorandum of points and authorities. No request was made for argument.

## I.     Summary and Recommendation

On appeal the plaintiff contends that the ALJ's non-disability determination is not supported by substantial evidence, because he erroneously relied on "confusing" vocational testimony, erroneously relied on testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT"), erroneously failed to consider his lack-of-treatment explanation, and erroneously failed to afford a *de novo* hearing following the Appeals Council remand. For the reasons that follow, these arguments are without merit.

## II.     Standard of Review

The court's review in this case is limited to determining whether the Commissioner's factual findings are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642). The court is "not at liberty to re-weigh the evidence …or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## II. Evidence Summary

### Work History and Vocational Profile

At the time the plaintiff alleges on amendment that his disability began, he was forty years of age. (R.26,130,141,395,456). His education ended after the 9th or 10th grade. (R.38,164,155,250). He has not engaged in any decisionally significant work activity since sustaining a work-related injury to his right foot on September 8, 2000. (R.320-323,463,474). His past relevant work was varied and included construction and roofing jobs that were largely semi-skilled and exertionally medium to heavy, work as a dump truck driver/hauler that was semi-skilled and exertionally light to medium, work as a forklift operator that was semi-skilled and exertionally medium, work as a truck cleaner that was unskilled and exertionally medium,

4

and his last job maintaining a golf course was semi-skilled and exertionally medium. (R.483-484).

## Medical History

The plaintiff's health-related records document his having sustained an open partial right foot amputation on September 8, 2000, and upon admission to University of Virginia Medical Center ("UVaMC") he underwent immediate irrigation, debridement and surgery. (R.313-323). On the fourth day in the hospital, he underwent a repeat irrigation and debridement of the trauma site, and the wound was noted "to look good without any areas of gross contamination." (R.304-305). Two days later the dressing was changed, and again the trauma site was found to be "clean, dry and intact." (*Id.*). When discharged the following day, the plaintiff was able to walk with crutches and was given a prescription of Percocet for pain. (*Id.*). When seen on November 9, 2000 for a follow-up surgery appointment, the wound was found to be well-healed; the plaintiff was advised that he could start full weight-bearing as tolerated, and he was referred to the Amputee Clinic for the fitting of a prosthesis. (R.293A).

Eleven months later, the plaintiff returned to UVaMC for a right tibiocalcaneal fusion with internal fixation and a bone graft procedure. (R.302-303). When seen for a follow-up appointment on October 11, 2001, the surgical site was found to be clean, dry and intact. (R.293). On November 1, 2001 the surgical site was noted to be well-healed. (R.291). In mid-December, Dr. Shepard Hurwitz, the plaintiff's Amputee Clinic physician, found the plaintiff to have only a "minimal tender" right heel. (R.278-290). In his opinion the plaintiff's prognosis was "good," and he prescribed a new prosthetic device. (*Id.*). Six weeks later, the plaintiff was

5

wearing the new prosthesis, but in Dr. Hurwitz's opinion he remained unable to work. (R.287-288). When he was seen on May 15, 2002, Dr. Hurwitz noted that the plaintiff was "doing well [both as to] fit and function," and he opined that the plaintiff would not be able to return to his previous job. (R.285).

Due to leg shrinkage, a new prosthesis was prescribed by Dr. Hurwitz in September, and the plaintiff was advised to curtail his physical activities until the new prosthetic was received. (R.284). Dr. Hurwitz's next office note dated in January 2003, records the plaintiff's report that he was doing well with his new prosthesis. (R.283). When seen in July 2003 the plaintiff reported only that he needed new insoles. (R.282). In October he reported no new issues; and when last seen by Dr. Hurwitz on November 24, 2003, the plaintiff was noted to be doing quite well and was advised to call the office if he had any problems or concerns. (R.327-327).

Fifteen months later, a consultive examination performed by James Long, M.D., on April 5, 2004 disclosed a well-healed injury site, the absence of any effective right ankle or foot function, the loss of some strength in both lower extremities, some loss of lumbar spine flexion, some soft tissue swelling above the malleolus bone in plaintiff's right ankle, and the plaintiff's use of a cane to assist with ambulation. (R.332-333,335-337,338-339). Based on the results of his consultive examination, Dr. Long concluded that without physical therapy or some orthopedic rehabilitation protocol, the "functional prognosis [was] poor. (R.333-334).

6

After having sought no medical treatment for nearly three years, the plaintiff was seen at Emergicare of Waynesboro on one occasion in November 2005 with pain complaints related to his right forefoot amputation injury and subsequent surgery. (R.349-350). A pain reliever was prescribed, and the plaintiff sought no follow-up treatment despite the demonstration of post-surgical changes on X-ray. (*Id*.).

Pursuant to an agency-arranged consultive examination, Dr. Long saw the plaintiff for a second time on July 11, 2006. (R.353-357). His clinical impressions remained essentially the same as they had been in April 2004.

**Vocational Evidence**

With appropriate references to the plaintiff's medical record, three state agency reviewers between April 19, 2004 and November 2006 separately concluded that the he retained the functional ability to perform a significant range of sedentary work. (R.340-347,358-364, 365-370). Consistent with these state agency residual functional capacity assessments, at the hearing in response to the ALJ's hypothetical question that assumed an individual with the plaintiff's vocational profile, an individual with the plaintiff's ankle and foot injury and an individual limited to sedentary work that required only occasional postural activities and no significant exposure to hazards such as heights or moving machinery, the vocational witness testified that such a hypothetical individual could perform a significant range of sedentary unskilled work that

7

exists in the national economy. (R.484-485). As representative examples of such work, the vocational witness cited jobs such as a courier, small van driver, and a range of simple assembly work. (R.484-489).

## Administrative Decision Summary

After incorporating by reference his earlier summary of the medical evidence, outlining Dr. Long's consultive examination findings and determining that the plaintiff did not have a listing-level impairment, the ALJ assessed the plaintiff's statements about his intensity and persistence of his subjective symptoms, restrictions and limitations pursuant to 20 C.F.R. § 1529(c) and 20 C.F.R. 416.929(c). In doing so, he took into consideration both the objective medical evidence and the other forms of evidence identified in 20 C.F.R. § 1529(c)(3)(i)-(vii), and after doing so he concluded that the plaintiff's condition could be reasonably expected to produce the pain and other subjective symptoms about which the plaintiff testified; however, his statements about the intensity, persistence and limiting effects of his condition were "not entirely credible." (R.23-25). Consistent with the agency's sequential evaluation process the ALJ next determined that the plaintiff lacked the functional ability to perform any of his past work and lacked the residual functional ability to perform a full range of sedentary work. (R.26). Consistent with the vocational testimony and consistent with the opinions of the state agency reviewers, the ALJ further concluded that the plaintiff retained the functional ability to meet the exertion requirements of a range of sedentary work and was not, therefore, disabled within the meaning of the Act. (R.26-27).

## IV. Analysis

### A.

As the first argument advanced by the plaintiff to support his contention that the non-disability determination was erroneous, the plaintiff argues that the ALJ relied on "confusing" vocational testimony. On review this contention is unsupported by the record.

Although the colloquy between the ALJ and the vocational witness was not the paradigm of clarity, it was comprehensive, fully understandable, and far from "confusing." The ALJ posed a straight forward hypothetical question that took into account an assumed post-injury residual ability to meet the exertion requirements of sedentary work which required only occasional postural activities and an avoidance of hazards. (R.484-485). In his response, the vocational witness offered alternative answers depending on whether the ALJ considered the individual's ankle and foot damage to be sufficient to eliminate driving from consideration. (R.485). Expanding on his hypothetical question, the ALJ then asked the vocational witness to take into account a person with the plaintiff's vocational profile, and in reply the vocational witness testified that under those facts, the plaintiff could perform a significant range of the "something like 300 different occupational titles" in the assembly grouping. (R.487).

Therefore, this hypothetical inquiry was clearly based in fact. It was based on a proper evaluation and consideration of the medical and testimonial evidence concerning the combined

9

effects of the plaintiff's impairments. It established that the plaintiff could perform alternative work existing in the national economy. It was dealt-with appropriately in the ALJ's opinion, and the plaintiff's claim that it was "confusing is simply without merit.

### B.

Equally unpersuasive is the plaintiff's second contention that the ALJ erred by failing to ask the vocational witness whether a conflict existed between his job-identification testimony and the DOT. [5] Citing Social Security Ruling ("SSR") 00-4p the plaintiff argues that it was "violated" by the ALJ when he "[neither] acknowledged [nor] resolved" an apparent conflict between the vocational testimony concerning sedentary *assembly* jobs and the lengthy DOT list of assembly jobs requiring light exertion. This argument, however, seeks to read SSR 00-4p too broadly.

It "indeed requires the ALJ to inquire about any unresolved conflicts between the DOT and evidence offered by the [vocational witness]," * * * however, "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if [it is] correct." *Brooks v. Astrue*, 2012 U,S, Dist. LEXIS 41295, *7, 10 (WDVa, Mar. 26, 2012). Moreover, it requires no such explanation unless there is in fact an

---

[5] The vocational witness did not reference any specific DOT job numbers in his testimony. (R.481-489).

apparent conflict, and the ALJ in the instant case concluded that there was in fact none. [6] Absent such conflict, [the] plaintiff is not entitled to any relief, regardless of whether there was any technical error on the part of the ALJ." *Caldwell v. Astrue*, 2011 U.S. Dist. LEXIS 120646, *13 (WDNC, Oct. 18, 2011) (citing *Fisher v. Barnhart*, 181 F. App'x 359, 365-366 (4th Cir. 2006)).

Moreover, even if it is assumed *arguendo* that some apparent or potential conflict existed and the ALJ erred in failing to ask the vocational witness directly whether his testimony was consistent with the DOT, the error was harmless. *See Rutherford v. Barnhart*. 399 F.3d 546, 557 (3rd Cir. 2005) (a plaintiff "cannot look to SSR 00-4p as a source of relief" where the alleged inconsistencies did not apply to all of the jobs identified by the vocational witness and were not egregious enough "either in number or in substance" to bring into question the ALJ's reliance on the expert's testimony); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (a harmless error analysis applied to the ALJ's incorrect statements that were irrelevant to whether the plaintiff had a severe impairment); *Jones v. Apfel,* 190 F.3d 1224, 1430 (11th Cir. 1999) (vocational testimony "trumps" the DOT to the extent the two are inconsistent); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (the DOT "is not the sole source of admissible evidence concerning jobs"); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 858 (6th Cir. 2010) (the mere fact that the expert identified an

---

[6] In his decision the ALJ specifically concluded, "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*." (R.27).

:

11

occupation not described by DOT does not create a conflict; the "DOT contains information about most, but not all, occupations.").

## C.

On appeal the plaintiff next contends that the ALJ "failed to comply with SSR 96-7p" by allegedly discrediting his subjective complaints on the basis of his lack of treatment without first considering his non-treatment explanation. [7] First and foremost, this assertion is factually untrue. Consistent with the agency's two-part evaluation of pain and other subjective symptoms, [8] the ALJ found that the plaintiff's medical condition could be reasonably expected to produce the subjective symptoms alleged by the plaintiff, and he followed-up by evaluating the intensity and persistence of the plaintiff's pain and other subjective symptoms and the extent to which the plaintiff's his medical condition affects his ability to work. (R.24-25). In doing so, the ALJ took note of the plaintiff's testimony concerning the nature and extent of his on-the-job right foot injury, his subsequent surgery, his "constant" foot pain, his need to keep it elevated for one to two hours each day, the swelling he experiences as the result of prolonged standing, his irregular gait, and its impact on his "worsening low back pain," the nature and extent of his daily

---

[7] During the second administrative hearing on April 17, 2007 the plaintiff testified that he had not seen a doctor since the first hearing in March 2005 and was not currently taking any medication because he had no health insurance and no money. ( R.460, 475).

[8] "Two nearly identical regulations, 20 C.F.R. §§ 404.1529 and 416.929, explain how the Social Security Administration evaluates a claimant's symptoms to determine whether he or she is disabled, and Social Security Ruling 96-7p clarifies these regulations by explaining when and how an ALJ can weigh the credibility of the claimant's own testimony. First, the ALJ must determine whether medically determinable mental or physical impairments can produce the symptoms alleged. Second, the ALJ must evaluate the claimant's testimony about his subjective experiences. If the ALJ discredits the claimant's testimony, he must give "specific reasons" that are "grounded in the evidence." See Soc. Sec. R. 96-7p; *see also Craig*, 76 F.3d at 591-96 (anticipating the standard set forth in Ruling 96-7p as applied to allegations of pain)." *Fisher v. Barnhart*, 181 Fed. Appx. 359,363 (4th Cir. 2006).

12

activities, and his lack of medical treatment or medications or replacement of his worn prosthesis because he had no insurance or money. (R.24; *see also* R.457-478). The ALJ then reviewed the plaintiff's activities, the extent of the plaintiff's injury and treatment history, Dr. Long's consultive examination findings, and the opinions of the state agency medical reviewers. (R.24-26). After also noting the absence of any indication in the record that the plaintiff had ever sought any emergency treatment either for foot or back pain, the ALJ noted the plaintiff's reliance on over-the-counter pain relievers, and the ALJ concluded that the record did not support the allegations either of a worsening of his foot condition or totally disabling pain and functional limitations. (R.26).

Therefore, the ALJ made no "impermissible . . . inferences" from the plaintiff's failure to seek treatment" as the plaintiff argues. To the contrary, the ALJ fully met the adjudication responsibilities mandated under SSR 96-7p. He considered the entire record, including the objective medical evidence. He considered the plaintiff's statements about his symptoms. He considered the information proved by the examining physician about the plaintiff's symptoms and their functional effect. He considered other relevant evidence, including the functional assessments of the state agency reviewers. He provided a non-conclusory basis for his credibility finding. He made a decisional record that clearly demonstrated both a proper analysis of the plaintiff's subjective complaints and provided a substantial evidentiary basis for his credibility finding. *See Felton-Miller v. Astrue*, 2011 U.S. App. LEXIS 25415, *3 (4th Cir. 2011) (Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.).

13

**D.**

Citing no authority for his final contention on appeal, the plaintiff argues that he was not "afford[ed] a full and complete *de novo* hearing on remand," because the ALJ's written decision incorporated by reference his previous evaluation of the plaintiff's medical record. Somehow, the plaintiff contends, this made the ALJ's second written decision "ambiguous," because the ALJ did not specify whether he was intending to reference the medical evidence summary in his June 7, 2005 written decision (R.37-44,383-390) or some other medical summary prepared by a state agency reviewer.

As the Commissioner aptly points-out in his brief, context and common sense make it obvious that the ALJ was referring to the detailed medical evidence summary set-out on pages 3 (R.39,385) through 6 (R.42,388) of his June 2005 decision. And as the Commissioner also correctly points-out the ALJ's reference to his prior medical evidence summary is also evident from the omission of a step-two discussion [9] in his May 2007 decision (R.16-28). In short, this claim of decisional ambiguity by the plaintiff is totally lacking in any merit; it warrants absolutely no consideration, and in the context of this case it is total nonsense. [10]

---

[9] At step-two of the oft-repeated five-part sequential evaluation process for determining whether an individual is disabled, the claimant to establish that he or she has a medically severe impairment or combination of impairments. *E.g., Reichenbach v. Heckler,* 808 F.2$^d$ 309, 311 (4$^{th}$Cir.1985).

[10] The English jurist and Lord Chancellor John Singleton Copley appropriately observed, "It is the duty of a judge to make it disagreeable to counsel to talk nonsense."

14

## V. Proposed Findings

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;

2. The vocational testimony was neither confusing nor an inadequate basis for the ALJ findings;

3. The vocational testimony was consistent with the DOT;

4. The plaintiff's lack-of-treatment explanation was appropriately considered by the ALJ;

5. The plaintiff was afforded a full and fair second administrative hearing;

6. The limitations included by the ALJ in the hypothetical questions posed to the vocational witness are supported by substantial evidence and consistent with the ALJ's decisional findings;

7. The ALJ properly resolved all decisionally relevant evidentiary conflicts;

8. The Commissioner met his burden of proving that through the date of the ALJ's decision the plaintiff possessed the residual functional ability to perform work which existed in significant numbers in the national economy;

9. The plaintiff has not met his burden of proving a disabling condition through the date of the ALJ's decision; and

10. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

15

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, DENYING the plaintiff's motion, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

### VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 31st day of May 2012.

                                                                             s/ *James G. Welsh*
                                                                        United States Magistrate Judge